**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION**

| | |
|---|---|
| Tetra Tech EC/Tesoro Joint Venture, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>Sam Temples Masonry, Inc., and North )<br>American Specialty Insurance Company, )<br>)<br>Defendants. )<br>)<br>United States of America, for and on behalf of )<br>Sam Temples Masonry, Inc., )<br>)<br>Third-Party Plaintiff, )<br>)<br>v. )<br>)<br>Safeco Insurance Company of America, Burgess & )<br>Niple, Inc., Heritage Roofing Company, Inc., Corps )<br>Construction, Inc., Assurance Waterproofing Co., )<br>Inc., and Jones Glass, Inc., )<br>)<br>Third-Party Defendants, )<br>)<br>and )<br>)<br>North American Specialty Insurance Company, )<br>)<br>Third-Party Plaintiff, )<br>)<br>v. )<br>Burgess & Niple, Inc., and Heritage Roofing )<br>Company, Inc., )<br>)<br>Third-Party Defendants. )<br>_____ ) | Civil Action No. 3:10-CV-1597-CMC<br><br>**OPINION AND ORDER<br>ON MOTION TO DISMISS<br>THIRD-PARTY COMPLAINT**<br>**(Dkt. No. 67)** |

This matter is before the court on motion of Third-Party Defendant Heritage Roofing Company, Inc., ("Heritage"), for dismissal of the amended third-party complaint filed by Defendant

and Third-Party Plaintiff North American Specialty Insurance Company ("NASIC"). For the reasons set forth below, this motion is granted in part and denied in part.

## BACKGROUND

**Parties.** The dispute at issue in this action arises out of a construction project on Fort Jackson, South Carolina ("the Project"). Plaintiff Tetra Tech EC/Tesoro Joint Venture ("Tetra Tech"), the prime contractor for the Project, initiated this action against two Defendants: Sam Temples Masonry, Inc. ("Sam Temples") and NASIC. Sam Temples served as masonry subcontractor on the Project while NASIC provided the performance bond for Sam Temples' work. That bond named Sam Temples as principal and Tetra Tech as obligee.

**Amended Complaint.** In its amended complaint, Tetra Tech alleges that Sam Temples failed to perform its work satisfactorily resulting in water intrusion into one of the buildings in the Project. Dkt. No. 47. It further alleges that Sam Temples failed to reperform the work or correct the deficiencies as required by Sam Temples' subcontract, causing Tetra Tech to suffer damages. Those damages include but are not limited to damages to the Project (including to work by other subcontractors) due to water intrusion, costs to reperform Sam Temples' work, and penalties for related delays. Tetra Tech's claims against NASIC are based on allegations that NASIC failed to make good on the bond after Sam Temples' alleged default. Tetra Tech seeks to recover both the full amount of the bond and attorneys' fees from NASIC. The various theories under which Tetra Tech proceeds include: (1) breach of contract (against both Defendants); (2) breach of the performance bond (against NASIC); (3) breach of express and implied warranty (against both); (4) contractual indemnification (against Sam Temples); and (5) negligence (against Sam Temples).

**Third-Party Complaint.** In addition to answering Tetra Tech's amended complaint, NASIC and Sam Temples filed third-party complaints in which they named Heritage and others as Third-Party Defendants.[1] The critical allegations may be summarized as follows: (1) Heritage Roofing was hired by Tetra Tech to perform roofing and work in connection with the Project (Dkt. No. 56 ¶ 8); (2) Sam Temples was hired by Tetra Tech to perform masonry work in connection with the Project (*id.* ¶ 9); (3) NASIC executed a performance bond in connection with Sam Temples' subcontract, naming Tetra Tech as obligee and Sam Temples as principal (*id.* ¶ 10); (4) through this action, Tetra Tech seeks relief from Sam Temples and NASIC for allegedly defective work, failure to reperform the work, and failure to perform under the bond (*id.* ¶ 11); and (5) Heritage Roofing breached its contract with Tetra Tech in various respects including failing to exercise reasonable care, failing to perform its work in accordance with the drawings and specifications, and failing to install the roof flashing in conformance with the Construction Documents and with the roofing manufacturer's recommended requirements (*id.* ¶ 12).

Based on these allegations, NASIC asserts that "[a]ny damages sustained by Tetra Tech in connection with the Project were proximately caused by Heritage Roofing's breach of its contractual obligations to Tetra Tech" and these breaches "caused and/or contributed to any default on the part of [Sam Temples] with respect to [Sam Temples] Subcontract." *Id.* ¶¶ 37-38. NASIC further asserts that "NASIC is contingently subrogated to the rights of Tetra Tech against Heritage Roofing to the extent that NASIC pays the claim which Tetra Tech has asserted against it in this action." *Id.*

---

[1] NASIC and Sam Temples each named Heritage and Burgess & Niple, Inc. ("B&N Architecture") as Third-Party Defendants in their respective third-party complaints. Sam Temples named three additional Third-Party Defendants. Multiple motions to dismiss have been filed by these Third-Party Defendants. This order addresses only Heritage's motion to dismiss NASIC's third-party complaint.

¶ 39.

## STANDARDS

Resolution of the present motion requires consideration of both Rules 12(b)(6) and 14 of the Federal Rules of Civil Procedure. The standards applicable to these rules are set out below.

### I. Rule 12(b)(6)

A motion under Federal Rule of Civil Procedure 12(b)(6) should be granted only if, after accepting all well-pleaded allegations in the complaint as true, it appears certain that the plaintiff (here Third-Party Plaintiff NASIC) cannot prove any set of facts in support of its claims that entitles it to relief. *See Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999). Although the court must take the facts in the light most favorable to the plaintiff, it "need not accept the legal conclusions [the plaintiff would draw] from the facts." *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008) (quoting *Eastern Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000)). The court may also disregard any "unwarranted inferences, unreasonable conclusions, or arguments." *Id.*

The Rule 12(b)(6) standard has often been expressed as precluding dismissal unless it is certain that the plaintiff is not entitled to relief under any legal theory that plausibly could be suggested by the facts alleged. *See Mylan Labs., Inc. v. Markari*, 7 F.3d 1130, 1134 (4th Cir. 1993). Nonetheless, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) (quoted in *Giarratano*, F.3d at 302). *See also Wolman v. Tose*, 467 F.2d 29, 33 n.5 (4th Cir. 1972) ("Under the liberal rules of federal pleading, a complaint should survive a motion to dismiss if it sets out facts sufficient for the court to infer that all the required elements of the cause of action are present.").

Thus, in applying Rule 12(b)(6) the court also applies the relevant pleading standards. In this case, the relevant pleading standards include those set by Rules 8 and 14. Rule 8 requires a plaintiff to include more than mere conclusory statements in support of its claim. *See Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (court need only accept as true the complaint's *factual* allegations, not its legal conclusions); *see also Bass v. Dupont*, 324 F.3d 761, 765 (4th Cir. 2003) (holding that "[w]hile a plaintiff is not charged with pleading facts sufficient to prove her case, as an evidentiary matter, in her complaint, a plaintiff is required to allege facts that support a claim for relief."). Rule 14, which is discussed in detail below, authorizes a defendant to bring in a third party to answer to a limited category of claims related to the claims against the defendant.

**II.     Rule 14**

Rule 14 authorizes "[a] defending party . . . , as third-party plaintiff, [to] serve a summons and complaint on a non-party who is or may be liable to it for all or part of the claim against it." Fed. R. Civ. P 14(a)(1). The plain language of this rule imposes two restrictions relevant to the present motion. First, the non-party must be potentially liable *to the third-party plaintiff*. Second, the non-party's liability *must relate to the plaintiff's claim against the defendant/third-party plaintiff* such that the third-party defendant's liability arises only if the defendant/third-party plaintiff is first held liable to plainiff.

These dual principles are well summarized as follows:

> A third-party claim may be asserted under Rule 14(a)(1) *only when the third party's liability is in some way dependent on the outcome of the main claim or when the third party is secondarily liable to the defending party*. The secondary or derivative liability notion is central and thus impleader has been successfully utilized when the basis of the third-party claim is indemnity, subrogation, contribution, express or implied warranty, or some other theory.
>
> If the claim is separate or independent from the main action, impleader will

> be denied. *The claim against the third-party defendant must be based upon plaintiff's claim against defendant.* The crucial characteristic of a Rule 14 claim is that defendant is attempting to transfer to the third-party defendant the liability asserted against defendant by the original plaintiff. The mere fact that the alleged third-party claim arises from the same transaction or set of facts as the original claim is not enough. In this connection, impleader under Rule 14(a) should not be confused with interpleader under Rule 22.

Wright, Miller, Kane and Marcus, 6 Federal Practice and Procedure Civil ("Wright & Miller") §1446(emphasis added) (internal footnotes omitted).[2]

Rule 14 also requires that there be a right to relief under the applicable substantive law. *Id.* In other words, the defendant must "assert a derivative or secondary claim for relief *that is recognized by applicable substantive law*." *Id.* (emphasis added). A third-party claim for relief may, nonetheless, be based on contingent liability which "technically does not come into existence until the original defendant's liability has been established." *Id.*

When a third-party claim is otherwise properly asserted, the court may exercise supplementary jurisdiction over the claim. *See* Wright & Miller § 1444 ( noting that "[s]ince 1990, . . . whether jurisdiction is proper in the impleader context is answered by reference to the supplemental-jurisdiction statute").[3] Consistent with this standard, the court may exercise its discretion to dismiss a third-party complaint even if the complaint otherwise satisfies the requirements of Rule 14. *Id.* § 1446; *see also* 28 U.S.C. § 1367(c) (setting general standards for declining to exercise supplemental jurisdiction).

---

[2] Before 1948, Rule 14 allowed a defendant "to implead persons directly liable to plaintiff." Wright & Miller § 1441 (explaining that "Rule 14 now permits defendant *only* to implead a person 'who is or may be liable' to the third-party plaintiff for all or any part of 'the claim against it'") (emphasis added).

[3] Before enactment of the supplemental jurisdiction statute, most courts held that third-party claims were "within the ancillary jurisdiction of the federal courts." Wright & Miller § 1444 (addressing historical development of ancillary jurisdiction over third-party claims).

6

## SUMMARY OF ARGUMENTS

Heritage argues that NASIC's claim against it does not fall within the scope of Rule 14 because NASIC is "trying to force a subcontractor into the litigation [where] Plaintiff does not feel the subcontractor is at fault and/or has elected not to sue the subcontractor." Dkt. No. 67 at 3. This argument is based on Heritage's interpretation of NASIC's third-party complaint as an attempt to step into the shoes of its obligee, Tetra Tech, rather than into the shoes of its principal, Sam Temples. *Id.* at 4. Heritage further argues that Sam Temples (or NASIC standing in Sam Temples' shoes) would have no claim against Heritage because such a claim would essentially be a claim for contribution among joint tortfeasors – not a claim for equitable indemnification. *Id.* at 5 (quoting *Stanley v. B.L. Montague Co., Inc.*, 382 S.E.2d 246 (S.C. App. 1989) ("It is clear from the pleadings that the defendants in essence want to join under the guise of indemnification third parties that may or may not be joint tortfeasors."). This argument presumes that NASIC's third-party complaint seeks to deflect liability, rather than to recover on some theory of derivative liability. Dkt. No. 67 at 6 (stating that Sam Temples and NASIC "are free to allege as a defense that other non parties are responsible, but they are not free to drag those non parties" into court as third-party defendants).

NASIC responds that it has a "right to implead Heritage [to] assert a third-party claim *for breach of Heritage's subcontract with Tetra Tech*." Dkt. No. 94 at 6. NASIC explains that the alleged breaches "caused and/or contributed to (a) the damages alleged by Tetra Tech and (b) any default on the part of [Sam Temples] with respect to the [Sam Temples'] Subcontract." *Id.* at 8. Thus, NASIC asserts that "it is contingently subrogated to the rights of Tetra Tech against Heritage to the extent that NASIC pays the claim which Tetra Tech has asserted against it in this action." *Id.*; *see also id.* at 10 ("NASIC is entitled to bring a third-party claim against Heritage under Rule 14 as

a party who may be liable to NASIC for the claim asserted against it by Tetra Tech. *Additionally*, NASIC, as surety, is entitled to be subrogated to the rights of its obligee, Tetra Tech, to the extent that NASIC makes payment to Tetra Tech in connection with the claims which Tetra Tech has asserted against NASIC in this action.") (emphasis added).

In its reply, Heritage characterizes NASIC's response as recognizing that its claim is for equitable subrogation. Dkt. No. 95 at 2. Heritage argues that no such claim is possible here because the defects alleged in Tetra Tech's amended complaint are limited to defects in the masonry work. Heritage asserts that denial of its motion would allow NASIC "to leapfrog from subrogated as to brickwork claims to subrogated as to all work of all subcontractors [as if NASIC stood] in the shoes of the general contractor[,]" Tetra Tech. *Id.* at 3 (citing *Encor Solutions v. Malcolm Pirnie, Inc.*, 2005 WL 1843253 (N.D.N.Y. 2005) ("A surety can only step into the shoes of either its principle [sic] or the obligee's shoes insofar as asserting claims related to its principle's [sic] default. . . . It cannot . . . step into a better pair of shoes.")).

## DISCUSSION

NASIC's third-party complaint may be construed as seeking relief under two divergent theories. First, it may be construed as seeking to hold Heritage responsible for any recovery which Tetra Tech might receive from NASIC (as surety for Sam Temples) under a theory that some action or inaction by Heritage caused or contributed to Sam Temples' failure to meet its contractual obligations to Tetra Tech. *See* Dkt. No. 56 ¶ 38 (third-party complaint alleging that Heritage's breaches "caused and/or contributed to any default on the part of [Sam Temples]"); Dkt. No. 94 at 8 (similar argument). In addition, NASIC appears to seek recovery from Heritage based on Heritage's breach of its subcontract with Tetra Tech *without limitation to breaches which*

8

*contributed to Sam Temples' failure* to meet its obligations. Dkt. No. 56 ¶¶ 37, 39; Dkt. No. 94 at 6 (arguing that NASIC may implead heritage for breach of Heritage's subcontact with Tetra Tech); *id.* at 8 (arguing that Heritage's defaults were the cause of Tetra Tech's damages); *id.* at 10 (arguing NASIC is subrogated to the rights of Tetra Tech). NASIC does, however, limit its pursuit of the second category of relief to the amount of any judgment which might be awarded against it. Dkt. No. 56 ¶ 39; Dkt. No. 94 at 10 (limiting any claim that it is subrogated to Tetra Tech's rights "to the extent that NASIC makes payment to Tetra Tech").

Under Rule 14, NASIC may pursue only the first category of relief. This is because Rule 14 only authorizes NASIC to seek relief from a third party "who is or may be liable *to it* for all or part of the claim against it." Fed. R. Civ. P. 14 (emphasis added). As noted above,

> [a] third-party claim may be asserted under Rule 14(a)(1) *only when the third party's liability is in some way dependent on the outcome of the main claim or when the third party is secondarily liable to the defending party*. The secondary or derivative liability notion is central and thus impleader has been successfully utilized when the basis of the third-party claim is indemnity, subrogation, contribution, express or implied warranty, or some other theory.

Wright & Miller § 1446 (emphasis added).[4]

---

[4] Heritage argues that any claim for equitable indemnity is barred by *Rock Hill Telephone Co. v. Globe Communications, Inc.*, 611 S.E.2d 235 (S.C. 2005). In *Globe*, the court looked to the attenuated relationship between a utility and a subcontractor (of the utility's prime contractor) in holding that the utility could not seek equitable indemnification from the subcontractor for payments made to settle claims with a third party (who was injured due to a collision with the subcontractor's backhoe). *See id.*, 611 S.E.2d at 237 n.3 ("there must be some kind of relationship between the parties beyond the relationship established by virtue of one party alleging that he was sued because of another party's wrongdoing"). In reaching this conclusion, *Globe* addressed one of two situations in which a right to indemnity may arise: where there is a special relationship. *Id.* at 237 (explaining that the right to indemnity may arise "in cases of imputed fault or where some special relationship exists between the first and second parties."). To the extent NASIC alleges that some deficiency in Heritage's performance caused a corresponding deficiency in Sam Temples' performance, its claim rests on the alternative basis for indemnification: imputed fault.

To the extent NASIC's claim against Heritage is based on a theory that Heritage, *rather than* Sam Temples, was responsible for the damages, what it presents as a third-party claim is really a defense. Rule 14 is not so broad as to allow this factual defense to be pursued as a third-party claim. To allow Rule 14 to be used in this manner would, effectively, allow NASIC to assert claims on Tetra Tech's behalf, without the liability being *derivative* of NASIC's liability. To the extent such relief has ever been available under Rule 14, that availability was eliminated in 1948. *Supra* n. 2.

Because of this limitation, NASIC may not use Rule 14 to seek recovery from Heritage for any breach of Heritage's subcontract which did not cause or contribute to Sam Temples' breach of its subcontract (and NASIC's liability as surety for resulting damages). This is true even if NASIC seeks recovery from Heritage only up to the amount of any award against it. This limitation is not only consistent with the derivative nature of Rule 14 claims, but is necessary to avoid improperly limiting Tetra Tech's right to relief from all subcontractors who have caused independent harms.

The court offers several examples to explain the scope of what may and may not be pursued under Rule 14. First, assume that Heritage and Sam Temples each breached their subcontracts leading to the same injury, water damage due to defective masonry work, resulting in a total repair cost of $100,000 which was paid by Tetra Tech. If Tetra Tech seeks to sue only Sam Temples and NASIC for the defective work, Sam Temples and NASIC may properly assert third-party claims against Heritage to the extent they may fairly allege that Sam Temples' defective performance, if any, was caused or contributed to by Heritage's defective performance of its own subcontract.

Alternatively, NASIC and Sam Temples may take the position that Heritage was solely at fault for the damage. This is a factual defense and would not support assertion of a third-party claim against Heritage under Rule 14. However, under appropriate circumstances, a third-party claim could be asserted *alternatively* to such a defense.

10

The final example involves independent harms such as if Heritage and Sam Temples each breached their subcontracts causing independent injuries to Tetra Tech of $100,000 (Heritage's work) and $50,000 (Sam Temples' work) respectively. To be made whole, Tetra Tech would need to recover a total of $150,000 – $100,000 from Heritage and $50,000 from Sam Temples or its surety, NASIC. If Sam Temples and NASIC could, upon being held liable for Sam Temples' breach, step into Tetra Tech's shoes to assert any breach of contract claim relating to the project, then Sam Temples and NASIC might ultimately pay nothing (as the $50,000 award against them would be shifted to Heritage) while Tetra Tech would be limited to recovery of $100,000 -- $50,000 from Sam Temples/NASIC (which was actually paid by Heritage), and the remaining $50,000 from Heritage directly. Rule 14's requirement that the third-party claim be derivative avoids this result.

## CONCLUSION

For the reasons set forth above, the court grants the motion to dismiss in part and dismisses NASIC's third-party claim against Heritage to the extent it seeks relief other than for actions which allegedly caused or contributed to Sam Temples' breach of its own subcontract. While this limits the theories NASIC may advance in support of its claim against Heritage, it does not result in dismissal of that claim or dismissal of Heritage as a Third-Party Defendant.

**IT IS SO ORDERED.**

                                                           s/ Cameron McGowan Currie
                                                           CAMERON MCGOWAN CURRIE
                                                           UNITED STATES DISTRICT JUDGE

Columbia, South Carolina
March 21, 2011